UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-61786-CIV-COOKE/DUBÉ

FLOYD CUNNINGHAM,

    Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

THIS CAUSE is before this Court on the Motion for Summary Judgment filed by the Plaintiff (D.E. # 18) and the Motion for Summary Judgment filed by the Defendant (D.E. #19) pursuant to a Clerk's Notice of Magistrate Judge Assignment entered by the Clerk of Court, Unites States District Court for the Southern District of Florida. The issue before the Court is whether the record contains substantial evidence to support the denial of benefits to the Plaintiff, Floyd Cunningham (hereinafter "Cunningham" or "Plaintiff").

## I. FACTS

Cunningham filed applications for disability insurance benefits and supplemental security income on May 23, 2008, which asserted disability as of January 2, 2008. (R. 117-125).[1] The applications were denied initially and on reconsideration. (R. 59-70, 74-79). Following a hearing on December 4, 2009 (R. 27-43), the ALJ issued a decision denying the request for benefits. (R. 12-

---

1. All references are to the record of the administrative proceeding filed as part of the Defendant's answer. Subsequently, the Plaintiff amended his alleged disability onset date to April 7, 2006. (R. 124).

26). A request for review filed with the Appeals Council was denied. (R. 1-6).

The Plaintiff, 49 years old at the time of the hearing on December 4, 2009, testified that he lived alone. The Plaintiff asserted he previously worked as a financial examiner for the state of Florida monitoring investment banks and financial planners. Cunningham claimed he would register financial planners to determine whether they were qualified to sell insurance or financial plans. The Plaintiff stated his previous jobs duties required him to go to locations to view properties once a week. (R. 30).

Prior to working as a financial examiner, the Plaintiff asserted he had been a revenue specialist with the Department of Revenue. (R. 30-31). According to the Plaintiff, his job duties consisted of monitoring taxes for the state of Florida including sales tax, communication tax, and gross receipts. (R. 31). The Plaintiff stated he also monitored stores and went to the store to meet the owner to ensure that each business was in compliance with the law. (R. 31).

The Plaintiff testified he began his career as a revenue officer and then moved to the Department of Finance for the state of Florida where he spent three and a half years working with taxes. The Plaintiff stated he last worked between May and August 2009, as a driver with Speciality Automotive Treatments. (R. 31). Cunningham asserted he stopped driving because his feet became numb, and in one instance, he was unable to find the brakes with his feet and resorted to the use of a hand brake to stop the vehicle. The Plaintiff testified although he still drove, he only drove to the store and not long distances. The Plaintiff testified the only time he had driven long distances was when he worked for Specialty Automotive Treatments Company and was required to drive from Fort Lauderdale to Miami or West Palm Beach. (R. 32).

The Plaintiff further asserted he had left his job with the state of Florida because he began

2

having diabetic symptoms that included painful neuropathy and gout. The Plaintiff claimed he resigned in 2006 because he was unable to feel his feet, experienced acute pain in his kidneys, and was diagnosed with hydrocephalus. (R. 33). Cunningham further stated that while he was working he had difficulty walking to and from the fax machine because his feet would become numb and he would slip and fall. (R. 34). The Plaintiff testified part of his job was to create daily and weekly reports, and he had to generate the reports without assistance. (R. 35).

According to the Plaintiff, his disabling conditions included painful neuropathy located in his feet, gout in his bilateral big toes, and neuropathy in his legs. (R. 35). Cunningham stated he had arthritis in his bilateral knees and hips, and had 40 percent kidney function, asserting he was at stage three kidney failure. The Plaintiff testified he had an elongated heart due to high blood pressure and he suffered from labile hypertension. The Plaintiff stated his last blood pressure reading was 224/128. (R. 36).

Cunningham claimed he was affected by his symptoms because he was unable to get out of bed and would stay in bed during the day. The Plaintiff further asserted he was depressed. The Plaintiff testified he did not get enough sleep and was unable to work an eight-hour job because he could not walk far, stand for too long, or sit for too long. (R. 37). The Plaintiff stated he was unable to sit for extended periods of time because he had a crack in his tailbone.

In June 2009, the Plaintiff asserted he was treated in the emergency room because he had fallen and hurt his lower back. The Plaintiff testified the doctors had prescribed pain medication, and although he had been taking prescription medication for pain, at the time of the hearing he was taking non-prescription pain medication. The Plaintiff further stated he was scheduled to be evaluated by a doctor in two weeks after the hearing at which time he was going to request additional

pain medication. (R. 37).

Additionally, the Plaintiff testified he was able to sit for 30 minutes; and typically, he would sit and then lay down. (R. 37). Cunningham testified he would lay down on his back and stomach for as long as he could and then sit up for 30 minutes; stand for 15 to 20 minutes; lift 15 to 20 pounds; and walk one block. (R. 38). Cunningham stated he had trouble sleeping due to sleep apnea and used a CPAP machine. The Plaintiff asserted he had orthotics for his shoes and wore special stockings. (R. 39). Socially, the Plaintiff testified he got along with other people very well but found that he was not calling people as often as he had been. (R. 39). The Plaintiff asserted he was taking Zoloft for two years for depression, and used insulin and oral diabetic medication. (R. 40).

The Plaintiff asserted he was 5 feet, six inches tall and weighed 312 pounds. The Plaintiff testified his hypertension was not controlled and he was collectively taking 20 to 22 medications. (R. 40). The Plaintiff stated that while his doctor had mentioned he should loose weight to treat his diabetes, Cunningham stated he was unable to walk far. The Plaintiff testified he had gone to a gym for nine months in 2007 and "[t]he only thing that's left now is for [him] to go on a very serious, a strict diet." The Plaintiff also testified that his diet needed to be monitored because if he took insulin and did not eat, he would go into shock. Cunningham stated he did not receive disability benefits from the state of Florida. (R. 41).

The ALJ asked the Plaintiff if his former employer attempted to accommodate him due to his physical condition and the Plaintiff testified "[t]hey knew but... I was dying. I was in worse condition than I am now." The Plaintiff testified his condition was more acute when he resigned from his job because his blood pressure and sugar were high. Cunningham stated he was originally diagnosed in 1999 at Broward General Hospital with his sugar level being 1500. (R. 42). The

4

Plaintiff stated the medication improved his condition a small amount and he took his medication regularly. (R. 42-43).

In addition to the testimony presented at the hearing, medical records were submitted to the ALJ. However, a review of the medical records and the specific issues raised by the Plaintiff in his Motion for Summary Judgment shows that the resolution of the issues do not require this Court to specifically set out all the medical evidence in detail. Accordingly, this Court will discuss the legal issues involved and will incorporate the facts as appropriate within the arguments presented below.

After a hearing and review of the record, the ALJ issued an opinion finding that the Plaintiff had the following severe impairments: diabetes mellitus with neuropathy, gout, hypertension, obesity, renal disease, and tendinitis. (R. 17). The ALJ found the Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments; and had the residual functional capacity to perform a full range of sedentary work. (R. 18). The ALJ found the Plaintiff could perform his past work as a financial planner/examiner, and thus, the Plaintiff is not under a disability as defined in the Social Security Act. (R. 22).

## II. LEGAL ANALYSIS

Judicial review of the factual findings in disability cases is limited to determining whether the record contains substantial evidence to support the ALJ's findings and whether the correct legal standards were applied. 42 U.S.C. section 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Kelley v. Apfel, 185 F.3d 1211, 1213 (11th Cir. 1999); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). "Substantial evidence" is more than a scintilla, but less than a preponderance and is generally defined as such relevant evidence which a reasonable mind would accept as adequate to support a conclusion. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

In determining whether substantial evidence exists, the court must scrutinize the record in its entirety, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995); Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988). The reviewing court must also be satisfied that the decision of the Commissioner correctly applied the appropriate legal standards. See, Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987). The court may not reweigh evidence or substitute its judgment for that of the ALJ, and even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence. See, Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991); Baker v. Sullivan, 880 F.2d 319, 321 (11th Cir. 1989).

The restrictive standard of review set out above applies only to findings of fact. No presumption of validity attaches to the conclusions of law found by the Commissioner, including the determination of the proper standard to be applied in reviewing claims. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). The failure by the Commissioner to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal. Cornelius v. Sullivan, 936 F.2d 1143, 1145-1146 (11th Cir. 1991); See also, Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

Social Security regulations establish a five-step sequential analysis to arrive at a final determination of disability. See, 20 C.F.R. section 404.1520; 20 C.F.R. section 416.920 (a)-(f).

The ALJ must first determine whether the claimant is presently employed. If so, a finding of non-disability is made, and the inquiry ends. 20 C.F.R. section 404.1520(b). In the second step, the ALJ must determine whether the claimant suffers from a severe impairment or combination of

impairments. If such a finding is not made, then a finding of non-disability results, and the inquiry ends. 20 C.F.R. section 404.1520(c).

At step three, the ALJ compares the claimant's severe impairments to those in the listing of impairments. 20 C.F.R. section 404.1520(d), subpart P, appendix I. Certain impairments are so severe, whether considered alone or in conjunction with other impairments, that if such impairments are established, the regulations require a finding of disability without further inquiry into the claimant's ability to perform other work. See, Gibson v. Heckler, 762 F.2d 1516, 1518, n.1 (11th Cir. 1985). If the impairment meets or equals a listed impairment, disability is presumed, and benefits are awarded. 20 C.F.R. section 404.1520(d).

Step four involves a determination of whether the impairments prevent the claimant from performing his or her past relevant work. If the claimant cannot perform his or her past relevant work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show, at step five, that there is other work available in the national economy which the claimant can perform. 20 C.F.R. section 404.1520(e)-(f).

The claimant bears the initial burden of proving that he is unable to perform previous work. See, Barnes v. Sullivan, 932 F.2d 1356, 1359 (11th Cir. 1991). The inability to perform previous work relates to the type of work performed, not to merely a specific prior job. See, Jackson v. Bowen, 801 F.2d 1291, 1293 (11th Cir. 1986).

The Plaintiff's first point of contention is that the ALJ erred in failing to find the Plaintiff's psychiatric condition to be a severe impairment. The Defendant argues the ALJ appropriately found the Plaintiff did not have a severe mental impairment on the basis that the Plaintiff had no episodes of decompensation and mild to no limitations in the areas of activities of daily living, social

functioning, and concentration, persistence, and pace.

The determination of whether an impairment is severe or not at step two of the sequential analysis is a threshold inquiry. McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986). However, the ALJ need only to conclude that the Plaintiff had a severe impairment. Heatly v. Comm'r of Soc. Sec., 382. F.Appx. 823, 825 (11th Cir. 2010)(unpublished). In Heatly, the Eleventh Circuit held that "[e]ven if the ALJ erred in not indicating whether chronic pain syndrome was a severe impairment, the error was harmless because the ALJ concluded that Heatly had a severe impairment: and that finding is all that step two requires." Id. (citing Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir.1991) (applying the harmless error doctrine to social security cases), Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir.1987) ("the finding of any severe impairment... whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe" is enough to satisfy step two)).

In the instant matter, the ALJ found the Plaintiff had six impairments: diabetes mellitus with neuropathy, gout, hypertension, obesity, renal disease, and tendinitis. (R. 17). The Plaintiff argues the presence of a psychiatric condition, specifically depressive disorder and adjustment disorder with depressed mood, were ignored by the ALJ.

However, within his determination, the ALJ specifically addressed the Plaintiff's limitation of depression and found it to be "not severe" because it did not significantly limit the Plaintiff's ability to perform basic work activities. (R. 18). Despite the ALJ's analysis regarding the Plaintiff's depression, under the application of Heatly since the ALJ identified at least one severe impairment then considered all impairments in combination, whether severe or not, to determine whether Cunningham was disabled, the Court finds no error is present.

8

In a related argument associated with the Plaintiff's first contention, the Plaintiff argues the ALJ failed to address the opinions of consultative examiners, Drs. Besner and Nazario, who evaluated the Plaintiff's mental status. The Defendant contends the ALJ reviewed the entire record and cited to the opinions of Drs. Kirk and Register who had reviewed and interpreted the findings of Drs. Besner and Nazario.

The ALJ has a duty to develop the record fully and fairly. Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir.1997). In determining whether an individual is disabled, the Commissioner "will always consider the medical opinions in [the] case record together with the rest of the relevant evidence [] received." 20 C.F.R. § 404.1527(b); 20 C.F.R. § 416.927(b). The "opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician." Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir.1985).

In the instant case, the ALJ never referenced the opinions of examining physicians, Drs. Besner and Nazario. In March 2007, the Plaintiff was referred by the office of Disability Determinations for a general clinical evaluation with mental status. (R. 297-299). Dr. Adele Besner, Psy.D., conducted a diagnostic interview to assess Cunningham's mental status. (R. 298). While Dr. Besner did not provide a diagnosis, she concluded the Plaintiff did not appear to be able to perform some of the physical activities that may be required in the workplace, and his emotional state may also impact his ability to perform. The Plaintiff was noted to be capable of managing his own funds. Additionally, the examining doctor determined the Plaintiff was under the care of a physician, but was not receiving psychological and psychiatric services and noted Cunningham's prognosis was "fair." (R. 299).

Similarly, in July 2008, Dr. Andres Nazario conducted a general clinical evaluation with

mental status. (R. 359-362). The Plaintiff was diagnosed with adjustment disorder with depressed mood and Dr. Nazario noted there were no medical or clinical records available for his review. Dr. Nazario recommended that the Plaintiff could benefit from psychological intervention to assist with developing coping mechanisms to address his physical condition, and noted Cunningham was capable of managing his own financial affairs. (R. 361).

Although the Defendant argues that the ALJ stated within his determination that he considered and reviewed the entire record (R. 17), "a statement that the ALJ has considered all of the opinion evidence is not sufficient to discharge his burden to explicitly set forth the weight accorded to that evidence." Lawton v. Comm'r of Soc. Sec., 431 Fed. Appx. 830, 834 (11th Cir.2011) (citing Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir.1981).

Further, the Eleventh Circuit has directly addressed an ALJ's treatment of an examining physician's medical opinion. In Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir.2011) the court stated, "...the ALJ did not discuss pertinent elements of the examining physician's medical opinion, and the ALJ's conclusions suggest that those elements were not considered. It is possible that the ALJ considered and rejected [the] [] medical opinion[], but without clearly articulated grounds for such a rejection, we cannot determine whether the ALJ's conclusions were rational and supported by substantial evidence."

In the instant case, much like Winschel, the ALJ may have considered the opinions of examining physicians, Drs. Besner and Nazario, however, because the ALJ did not provide any rational, either in support or rejection of the opinions, the Court finds the decision regarding the Plaintiff's benefits was not supported by substantial evidence. Upon remand, the ALJ must determine the weight accorded to the opinions contained in the medical record, including the

opinions of Drs. Besner and Nazario. Although remand is required, a finding of disability is not appropriate at this time. Because remand is required on the above grounds, the other issues raised by the Plaintiff need not be addressed. See Jackson v. Bowen, 801 F.2d 1291, 1294 n. 2 (11th Cir.1986).

### III. CONCLUSION AND RECOMMENDATION

Based on the foregoing, this Court finds that the decision of the ALJ was not supported by substantial evidence and that the correct legal standards were not applied. Therefore, it is the recommendation of this Court that the decision of the Commissioner be **REVERSED AND REMANDED**. Accordingly, the Motion for Summary Judgment filed by the Plaintiff (D.E. # 18) should be **GRANTED in part** and the Motion for Summary Judgment filed by the Defendant (D.E. # 19) should be **DENIED**.

Pursuant to Local Magistrate Rule 4(b), the parties have fourteen (14) days from service of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Marcia G. Cooke, United States District Judge. Failure to file objections timely shall bar the parties from attacking on appeal the factual findings contained herein. Loconte v. Dugger, 847 F.2d 745 (11th Cir. 1988), cert. denied, 488 U.S. 958 (1988); R.T.C. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993).

**DONE AND ORDERED** this **15** day of June, 2012.

ROBERT L. DUBÉ
UNITED STATES MAGISTRATE JUDGE